## Latham *vs* Western.

ERROR TO THE CHRISTIAN CIRCUIT.

*Assignor and assignee.    Diligence by suit.*

.JUDGE BRECK delivered the opinion of the Court.

ASSUMPSIT.

.Case 72.

January 28.

Case stated and proof in the case.

THIS was an action of assumpsit brought by Latham as assignee, against Western as assignor of a promissory note. A verdict and judgment having been rendered for the defendant, the plaintiff has brought the case to this Court. The record contains the following facts:

On the 2d February, 1843, Hawks gave his note to Western for $342 76, payable four months after date in the Branch Bank of Kentucky at Hopkinsville. Before its maturity Western endorsed it to Latham and he endorsed it to Phelps, who brought suit upon it on the 21st September, 1843. The first term after its maturity was in November. Process was served upon Hawks on the 3d November, which was not in time for a judgment at that term. On the 26th March following, a judgment was obtained and execution issued on the 25th, and put into the hands of the Sheriff on the 26th April. The term closed on the 13th April, and the clerk of the Court proved that the execution issued as soon after the adjournment of the Court as it could be in the regular train of business in his office. That it was his practice to issue executions upon assigned notes first, and that the execution in this case was among the first issued after the Court adjourned. He also proved that the attorneys for the plaintiff made a memorandum upon the memorandum book of his office, about the 6th of April, directing that executions should be issued as soon as practicable, on all judgments obtained by them at that Court. That executions were sometimes issued during Court, when specially called for, but as a general rule they were not issued until after the adjournment of the Court, as it required several days to arrange his papers, tax costs, &c. That a large amount of business was

done and a great many judgments rendered at that term of the Court.

It also appeared in evidence that all the judgments rendered against Hawks at the November term of the Court, 1843, were collected; that he became notoriously insolvent early in the year 1844, and that nothing was made upon judgments rendered against him at the spring term of that year.

It was also in proof that on the 16th of September, 1843, between three and five o'clock in the evening, Hawks informed Latham that he should start for New York that night, and would pay him upon his return, and that he left Hopkinsville about three o'clock on the morning following. That Hawks and Latham both resided in Hopkinsville, and that a writ might have been served upon the former after he made the communication to Latham and before he left the next morning. Phelps was also introduced as a witness, who proved that the note in question had been transferred to him before its maturity, by Latham, for a valuable consideration, who had afterwards no interest or control over it. That he had no knowledge whatever of the intention of Hawks to go to New York. That after he had prosecuted Hawks to insolvency, Latham had satisfied the judgment.

Such being all the material facts of the case, the Court at the instance of the defendant, instructed the jury: If they believe from the evidence that Hawks did, in the latter part of the afternoon of the 16th September, 1843, inform the plaintiff of his intention to leave home on the next day for the city of New York, even although they may believe from the evidence that Phelps was the owner and possessor by assignment, of the note in contest, that the omission on the part of Phelps to sue until the 21st September, 1843, is a want of due diligence, and they must find for the defendant.

W. assigned the note of H. to L. who assigned it to P., H. gave notice to L. after the note fell due,
As we understand this instruction, it was the information communicated by Hawks to Latham on the 16th which rendered this delay on the part of Phelps to sue till the 21st, a want of due diligence. In that or any other view of it, as the record now stands, we think it

was erroneous. The transfer of the note by Latham to Phelps, was not inconsistent with the transfer of Western to Latham, and the liability of the former as assignor would not be affected by the fact that his assignee had placed the note beyond his reach and control. Had Latham been the holder of the note when he received the information from Hawks that he would leave on the following morning, it would have been a want of due diligence not to have sued immediately. The delay of an hour under such circumstances, might have been such neglect as would have exonerated the assignor. But he had parted with the possession and control of the note, as he had a right to do. He was guilty of no *laches*, because it was not in his possession, and he was consequently, unable to bring suit forthwith, upon receiving the information of Hawks' intention to leave for New York; of that intention Phelps, who had the possession and control of the note, had no knowledge, and was not, therefore, affected by it in any way. If by extraordinary diligence, Latham could have communicated to his assignee the intelligence that Hawks was about to leave the State, it would have been his duty to do it, and of the assignee to have used the like diligence in instituting suit, and the failure to use it would have exonerated his assignor. But we think it devolved upon the defendant in this case to show the practicability of communicating the intelligence by Latham to Phelps, of the intention of Hawks to leave home, in time to enable the latter to have sued and had process served before he left. But this fact he has failed to establish.

Suit was instituted by Phelps more than forty days before the commencement of the first term after the maturity of the note. This, for any thing appearing in the record in reference to the residence, business and condition of Hawks, which would have induced a man of ordinary prudence to have sued at an earlier day, was, in our opinion, reasonable diligence.

In view of all the circumstances attending the delay in issuing the execution, we are not prepared to assume, there being no instruction by the Court below in regard to it, that there was a want of reasonable diligence, and

LATHAM
*vs*
WESTERN.

that he would leave that night for N. York, and did so, by which P. was unable to sue and get judgment at the first term after the note fell due: P. sues on the note to the first term, had judgment at the succeeding term, and execution and a return of *nulla bona*; L. paid off the debt and sued W. his assignee. Held that the assignor of the note was not responsible for the failure of P., the holder of the note, to sue, unless it had been shown by the plaintiff that it was practicable for L to have notified P., and for P. to have brought the suit before the departure of Hawks.

The commencement of a suit by assignee 40 days before the first term after the note fell due, was, in the absence of any circumstances showing that the suit should have been sooner brought, is due diligence.

this conclusion is· sustained by the case of *Clark* vs *Prentice & Weissinger*, (3 *B. Monroe*, 584.)

The judgment is reversed and the cause remanded, that a new trial may be granted without the payment of costs.

*Morehead & Reed* for plaintiff; *B. & A. Monroe* for defendant.